**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| JESSICA REYES, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *v.* | § | CIVIL ACTION NO. 1:17-CV-16 |
| | § | |
| BONA 1372, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
GRANTING IN PART PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY
AN FLSA COLLECTIVE ACTION AND SEND NOTICE TO THE CLASS**

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and

is referred to the undersigned United States Magistrate Judge for pretrial management.  Doc. No.

29.  Plaintiffs Jessica Reyes, Gissela Lopez, and Oscar Atonal ("Plaintiffs") bring this case under

the Fair Labor Standards Act of 1938 ("FLSA") 29 U.S.C. §§ 201, *et seq*. on behalf of themselves

and similarly situated current or former employees of the three Defendants, Bona 1372, Inc., Bona

1900, Inc., and Hnreck Nazarian a/k/a/ Nazarian Enterprises d/b/a International House of Pancakes

("Defendants").  Doc. No. 12, at 1.  The Plaintiffs allege that the Defendants failed to pay lawful

overtime wages to the Plaintiffs and other similarly situated employees in violation of the FLSA.

*Id.* at 6.

Pending before the court is the Plaintiffs' "Motion to Conditionally Certify an FLSA

Collective Action and Send Notice to the Class" (Doc. No. 30), in which the Plaintiffs request that

the court (1) grant conditional class certification, (2) approve the proposed notice as drafted by the

Plaintiffs, (3) authorize the Plaintiffs' counsel to issue the proposed notice and send follow-up

postcards, and (4) require the Defendants to post conspicuous notices in English and Spanish in

their subject workplaces.  *Id.* at 16.  Having considered the motion and the parties' briefing, the

undersigned finds that the motion should be **GRANTED in part** and **DENIED in part**.  Because

the Plaintiffs have set forth evidence showing that they are similarly situated to other current or

former hourly employees of the Defendants, the court should grant conditional certification under

29 U.S.C. § 216(b) for a class defined as follows:

> To:
>> All current and former hourly-wage employees employed on or after [insert date three years before date the collective action is certified by the court's Order Adopting] at International House of Pancakes restaurants owned, operated, or controlled by Hnreck Nazarian (a/k/a Nazarian Enterprises).
>
> Re:
>> This is a Collective Action Lawsuit for the alleged non-payment of overtime wages brought under the Fair Labor Standards Act against Bona 1372, Inc., Bona 1900, Inc. and Hnreck Nazarian (a/k/a/ Nazarian Enterprises d/b/a IHOP).

## I.  Background

According to the Plaintiffs, Defendants Bona 1372, Inc. and Bona 1900, Inc. operate

International House of Pancakes ("IHOP") restaurants in Beaumont, Texas, and both entities are

owned by Defendant Nazarian.  Doc. No. 12, at 2.  Defendant Nazarian owns five other IHOP

restaurants in the Houston region as well.  *Id.*  The Defendants employed the Plaintiffs and other

employees in IHOP restaurants.  Doc. No. 30, at 4.  Defendant Nazarian's signature appeared on

the paychecks of the employees (*Id.* at 4), and Nazarian (as Nazarian Enterprises) "operates,

controls and manages" each of the IHOP restaurants he owns.  *Id.* at 9.  Employee work hours

were entered into a computer "by logging in with the last four digits of the social security number

under which the employee was working."  *Id.* at App., Ex. F.

Plaintiff Jessica Reyes alleges that instead of being paid overtime wages by the Defendants,

her hours in excess of forty were attributed to a pseudonym, "Laura Gonzales," with a social

security number different from her own when she worked as an hourly employee.  Doc. No. 30, at 5.  She was typically given one paycheck under her own name for approximately forty hours of wages at her regular hourly rate, and she received a second paycheck—made out to her pseudonym—at her regular hourly rate for hours worked beyond forty.  She also received a W-2 form reflecting the wages paid to her under the pseudonym.  *Id.*  Though she performed non-managerial work like cooking, preparing food, waiting tables, and bussing tables, Reyes also alleges that the Defendants misclassified her employment by designating her, at times, as a salaried managerial employee.  *Id.*  Accordingly, Reyes claims she was non-exempt under the FLSA and entitled to overtime pay.  *Id.*

Plaintiff Gissela Lopez alleges that she was denied overtime wages because her work was misclassified as salaried, managerial status.  *Id.* at 6.  Though Lopez was assigned "Kitchen Manager" as her job title, "her duties, responsibilities, and decision-making authority do not operate to render her an exempt employee for purposes of the FLSA."  *Id.* at 6-7.  As a result, she was denied overtime wages for hours worked beyond forty per week due to misclassification as a salaried employee.  *Id.* at 7.

Plaintiff Oscar Atonal alleges that he was denied overtime wages when he worked approximately eighty hours per week for the Defendants between 2013 and 2016 as an hourly employee.  *Id.* at 6.  Atonal received one paycheck under his own name for approximately forty hours per week and a second paycheck under the pseudonyms "Jose Coronado," "Oscar Flores," or "Oscar Menendez" for hours worked in excess of forty.  *Id.*

The Plaintiffs allege that the Defendants' scheme to avoid paying overtime wages using pseudonyms and false social security numbers (hereinafter "pseudonym scheme") is occurring at

all of the IHOP locations owned by Defendant Nazarian.  *Id.* at 7.  In addition to their own

affidavits, the Plaintiffs have submitted affidavits from other employees attesting to pay practices

designed to deny or avoid overtime wages to IHOP employees.  Doc. No. 30, Exs. E, G, and H.

Additionally, Antonio Lopez signed a consent form to opt into this lawsuit.  Doc. No. 27.

## II.  Legal Standard

"In 1938 Congress enacted the FLSA as a means of regulating minimum wages, maximum

working hours, and child labor in industries that affected interstate commerce."  *Reich v. Tiller*

*Helicopter Servs., Inc.*, 8 F.3d 1018, 1024 (5th Cir. 1993) (citing 29 U.S.C. § 202).  The Act was

designed to provide minimum protections for workers and to ensure that each employee would

receive "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork

as well as underpay."  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)

(quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942) (internal quotations

omitted).  "Accordingly, the FLSA established a minimum wage, regulations governing maximum

hours, recordkeeping and reporting requirements, provisions regulating child labor, and civil and

criminal penalties for violation of any of its provisions."  *Hesseltine v. Goodyear Tire & Rubber*

*Co.*, 391 F. Supp. 2d 509, 515 (E.D. Tex. 2005).  "Minimum wage and overtime requirements are

the two central themes of the Act."  *Id.*  The FLSA's overtime provisions generally prohibit a

covered employer from employing a worker "for a workweek longer than forty hours unless such

employee receives compensation for his employment in excess of the hours above specified at a

rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. §

207(a)(1) (2014).  The FLSA also requires that employers "make, keep, and preserve" records of

"the wages, hours, and other conditions and practices of employment" maintained by that

4

employer.  29 U.S.C. § 211(c) (2014).

The FLSA allows a collective action to "be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (2014).  "A collective action [under the FLSA] is similar to a class action brought under Rule 23 of the Federal Rules of Civil Procedure.  But, it is different from a class action in that absent class members do not share in the recovery (and are not bound by the judgment) unless they specifically opt into the class upon receiving notice of the action." *Sedtal v. Genuine Parts Co.*, No. 1:08-CV-413, 2009 WL 2216593, at *1 (E.D. Tex. July 23, 2009) (Heartfield, J.) (internal citation omitted).  A collective action "prevents piecemeal litigation, inconsistent adjudications, and difficult res judicata issues." *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 665 (E.D. Tex. 2003) (Davis, J.) (citing *Donovan v. Univ. of Tex.*, 643 F.2d 1201, 1206-07 (5th Cir. 1981)).

A district court has the "discretionary power to conditionally certify collective actions and authorize notice to potential class members." *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) (Schell, J.); *see also Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989) (holding district courts have discretion to implement 29 U.S.C. § 216(b) "in ADEA actions by facilitating notice to potential plaintiffs.").  However, a court should only conditionally certify a class and authorize notice if the plaintiff shows that other employees are "similarly situated." *Sedtal*, 2009 WL 2216593, at *2.

Courts use two approaches to determine whether to authorize notice to similarly situated employees: (1) the two-stage method set forth in *Lusardi v. Xerox, Corp.*, 118 F.R.D. 351 (D.N.J. 1987), and (2) the "spurious class action" method discussed in *Shushan v. Univ. of Colo.*, 132

F.R.D. 263 (D. Colo. 1990).  *See Zachary v. Cobalt Mortgage, Inc.*, No. 4:16-CV-754, 2017 WL 1079374 (E.D. Tex. Mar. 22, 2017) (Mazzant, J.)  Although the Fifth Circuit has discussed both approaches, it has refrained from officially adopting either one.  *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 n.1 (5th Cir. 2010) ("[W]e have not adopted any of the varying approaches for determining whether employees' claims are sufficiently similar to support maintenance of a representative action."); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-16 (5th Cir. 1995) (finding it unnecessary to decide between the two methods in order to conclude that the district court did not abuse its discretion), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  The undersigned will employ the two-stage *Lusardi* approach because it is the predominant method used by federal courts, including those within this District.  *See, e.g.*, *Tice*, 826 F. Supp. 2d at 994; *Wright v. O-Tex Pumping, LLC*, No. 2:15-CV-1895, 2016 WL 7634533, at *2 (E.D. Tex. June 6, 2016) (Gilstrap, J.); *Miranda v. Mahard Egg Farm, Inc.*, No. 4:15-CV-406, 2016 WL 1704861, at *1 (E.D. Tex. Apr. 28, 2016) (Mazzant, J.); *Hickson v. United States Postal Serv.*, No. 5:09-CV-83, 2010 U.S. Dist. LEXIS 104112, at *18 (E.D. Tex. July 22, 2010) (Craven, Mag. J.), *adopted by* 2010 U.S. Dist. LEXIS 104120 (E.D. Tex. Sept. 28, 2010) (Folsom, J.); *Sedtal*, 2009 WL 2216593, at *2 (Heartfield, J.).

The first stage of the *Lusardi* approach is the "notice stage," when the district court makes a decision based on the pleadings and any affidavits whether to "conditionally" certify the collective action and authorize notice to potential class members.  *Mooney*, 54 F.3d at 1213-14.  If the court grants conditional certification, putative class members receive notice and the opportunity to opt in.  *Id.* at 14.  The action then proceeds as a collective action throughout discovery.  *Id.*  The second stage, or "merits stage," typically arises upon the defendant's motion

for decertification after discovery is largely completed and the case is ready for trial.  *Id.*  At the merits stage, "the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question."  *Id.*

The instant case is at the notice stage, in which the court must determine whether to conditionally certify a collective action.  This determination by the court is a finding of fact.  *Kelly v. Healthcare Services Group, Inc.*, 106 F. Supp. 3d 808, 825 (E.D. Tex. 2015) (Gilstrap, J.) (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008)).  At the notice stage, the Plaintiffs bear the burden of presenting preliminary facts showing that a similarly situated group of potential plaintiffs exists.  *Tice*, 826 F. Supp. 2d at 995 (citing *Mims v. Carrier Corp.*, No. 2:06-CV-206, 2008 WL 906335, at *3 (E.D. Tex. Mar. 31, 2008) (Ward, J.)).  "The court's decision is often based only on the pleadings and affidavits that have been submitted."  *Sedtal*, 2009 WL 2216593, at *3 (citing *Mooney*, 54 F.3d at 1213).  Because the court has only minimal evidence at the notice stage, the determination "is made using a fairly lenient standard requiring nothing more than substantial allegations that the putative class members were victims of a single decision, policy or plan."  *Tice*, 826 F. Supp. 2d at 995.  "While the preliminary factual showing… is fairly lenient, it still must be based on competent evidence in order to avoid allowing unwarranted litigation.  *Id.* (citing *Mims*, 2008 WL 906335, at *3).  At a minimum, competent evidence must be based on personal knowledge of the facts.  *Id.* (citations omitted).  The court should "satisfy itself" that the potential plaintiffs are "'similarly situated' with respect to their job requirements and pay provisions."  *Id.* (citing *Allen v. McWane, Inc.*, No. 2:06-CV-158, 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006) (Ward, J.)).  "[T]he plaintiffs need only show that their positions are similar, not identical."  *Mims*, 2008 WL 906335, at *3 (citation omitted).

"Furthermore, in assessing the plaintiff's allegations, the court should consider factors such as whether potential plaintiffs were identified, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread plan was submitted. *Id.* (citing *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (Cobb, J.)).  Notice will be appropriate when there is "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Id.* (quoting *Villatoro v. Kim Son Restaurant, L.P.,* 186 F. Supp. 2d 807, 810 (S.D. Tex. 2003)) (internal quotations omitted) (brackets in original).  The fairly lenient standard typically results in conditional certification. *Mooney*, 54 F.3d at 1214.

The statute of limitations for FLSA claims is generally two years.  29 U.S.C. § 255(a) (2014).  However, the statute of limitations for "willful" violations has a three year period (*Id.*), and the "statute of limitations continues to run as to all similarly situated employees until they opt into the collective action." *Tice*, 826 F. Supp. 2d at 995 (citing *Hayes v. Laroy Thomas, Inc.*, No. 5:05-CV-227, 2006 WL 1001991, at *7 (E.D. Tex. Apr. 18, 2006) (Folsom, J.)).

## III.  Analysis

### A.  Plaintiffs Have Shown A Similarly Situated Group of Potential Plaintiffs Exists

At the current stage, the Plaintiffs bear the burden of presenting preliminary facts showing that a similarly situated group of potential plaintiffs exists.  *Tice*, 826 F. Supp. 2d at 995.  Based on the pleadings and affidavits, the Plaintiffs have provided such preliminary facts for hourly employees.  The most relevant evidence presented by the Plaintiffs is listed below.

### 1.  Statements from the Plaintiffs

Plaintiff Reyes claims she "personally heard" Defendant Nazarian tell IHOP managers to

"avoid paying employees overtime," and Area Supervisor Jesus Reyna—an employee of the Defendants—implemented the no-overtime policy.  Doc. No. 30, App., Ex. A.  Reyes' personal knowledge of the no-overtime policy extended to both Bona 1900, Inc. and Bona 1372, Inc., and she believes that the same policy extended to the other IHOP restaurants owned by Defendant Nazarian.  *Id.*  She claims personal knowledge of eleven named individuals—including Plaintiff Atonal—who were denied overtime by the use of pseudonyms, and she believes other employees at the Bona 1372, Inc. location were also denied overtime in the same manner, though she does not know their names.  *Id.* at Ex. J.

Plaintiff Lopez submitted a written declaration claiming the Defendants "devised a plan to avoid paying employees overtime wages" about three years ago at Bona 1900, Inc.  *Id.* at Ex. F. Defendant Bona 1900, Inc.'s managers "encouraged" the practice of using pseudonyms.  *Id.* Though Plaintiff Lopez did not work under a pseudonym, she has personal knowledge that other employees were "required to work under more than one social security number as part of Hnreck Nazarian's plan to avoid the payment of overtime wages."  *Id.*  She was aware that Plaintiff Reyes and Scarlet Banegas were denied overtime wages by being paid under the pseudonym scheme.  *Id.* She alleges that representatives from Defendant Nazarian's office implemented the pseudonym scheme at the Bona 1900, Inc. location, and she has "seen a packet of false social security numbers provided by the manager" of the IHOP restaurant Defendant Nazarian owns in Baytown, Texas. *Id.* at Ex. I.  She believes that Defendant Nazarian applied the no-overtime policy in all seven IHOP restaurants he owns.  *Id.*  Plaintiff Lopez claims personal knowledge of eleven named individuals—including Plaintiffs Atonal and Reyes—who were denied overtime by the use of pseudonyms.  *Id.*  Additionally, she claims that the manager of the Baytown IHOP location owned

by Defendant Nazarian provided false Social Security and Permanent Resident cards to a particular employee to aid in this scheme. *Id.* Copies of the cards were included with her declaration. *Id.*

### 2. Statements from Non-Parties

Priscilla Lewis is currently a non-party, but she desires to opt in if the case is certified as a collective action. Doc. No. 46, Tab 5, at 2. She submitted a written declaration that claims she worked at Defendant Bona 1900, Inc. as a server and manager. *Id.* at 1. Area Supervisor Jesus Reyna informed Ms. Lewis that "it was the policy of the company that no overtime would be paid," and she claims "employees were often required to clock out and work 'off-the-clock' performing duties such as rolling silverware." *Id.* She had personal knowledge of her employer's practice of requiring workers to work under pseudonyms for hours beyond forty. *Id.* She claims Mr. Reyna "told me that for a fee of $200, he would procure me a new identity to allow me to work over 40 hours per week." *Id.* Though Ms. Lewis declined Mr. Reyna's offer, she is aware that he made this offer to other employees. *Id.* While she was a manager, she was responsible for handing out paychecks to employees, and she learned that employees were receiving paychecks under multiple names. *Id.* She reported this to Mr. Reyna, but he "told me to mind my own business." *Id.* She also reported the paycheck scheme to Defendant Nazarian, but he "never acknowledged my report and never responded to me." *Id.*

Non-party Shandricka Newton submitted a written declaration that claims she saw Plaintiff Reyes "and other Latino workers" receiving two separate paychecks at Bona 1900, Inc., and she "understood that the purpose of this was to avoid paying these workers overtime." Doc. No. 30, App., Ex. E.

10

The Plaintiffs included a declaration by non-party Scarlet Banegas that was originally submitted for a separate, closed case (*Scarlet Banegas and Odin Campos v. Bona 1900, Inc. et al.*, No. 1:16-CV-86).  *Id.* at Ex. G.  Ms. Banegas' declared that Defendant Bona 1900, Inc. avoided paying her overtime wages by a pseudonym scheme.  *Id.*  She indicated that other employees at Defendant Bona 1900, Inc. also received checks under the pseudonym scheme, and they told her where she could cash her checks.  *Id.*  Pay stub information under two different pseudonyms is included with the declaration.  Doc. No. 30, App., Ex. G, App. A.

The Plaintiffs included a declaration by non-party Odin Campos that was originally submitted for the separate, closed case mentioned above that he filed with Ms. Banegas.  *Id.* at Ex. H.  Mr. Campos claims Plaintiff Lopez, as his manager at Defendant Bona 1900, Inc., offered to pay him under the pseudonym scheme instead of proper overtime wages.  *Id.*  He claims that Plaintiff Lopez told him that Defendant Nazarian "would yell at her for paying overtime."  *Id.*  Mr. Campos claims personal knowledge of other employees at Defendant Bona 1900, Inc. who were paid in the same manner.  *Id.*

### 3.  Summary of Statements and Conclusion on Conditional Certification

In summary, Mr. Campos claims other employees at Bona 1900, Inc. were paid under the pseudonym scheme, and Ms. Banegas makes the same claims about Bona 1900, Inc.  Ms. Newton claims other employees at Bona 1900, Inc. received two checks in order to avoid paying them overtime.  Ms. Lewis claims employees were paid off-the-clock at Bona, 1900, Inc., and she also alleges a pseudonym scheme there.  Plaintiff Lopez and Plaintiff Reyes both named eleven individuals—including the Plaintiffs—who were paid under pseudonyms.  Plaintiff Reyes claims the no-overtime policy affected Bona 1900, Inc. *and* Bona 1372, Inc.  Plaintiff Lopez claims she

saw a packet of false social security numbers provided by the manager of the IHOP that Defendant Nazarian owns in Baytown, Texas, and this manager provided false identity documents to an employee to aid in the scheme.  Ms. Lewis specifically identifies Area Supervisor Jesus Reyna as a participant in the scheme through his offer to procure a false identity for her.

Accordingly, the Plaintiffs have produced competent evidence—through their own declarations and the declarations of non-parties—that a group of plaintiffs who were denied overtime wages exists at Bona 1900, Inc. and Bona 1372, Inc.  Additionally, using the fairly lenient standard appropriate at this stage of analysis, the Plaintiffs have also made substantial allegations and presented competent evidence that potential class members (hourly wage earners) at Defendant Nazarian's Baytown IHOP and other IHOP locations were also victims of the single decision or policy to avoid paying overtime wages.  However, the Plaintiffs have not made substantial allegations that employees aside from Plaintiff Reyes and Plaintiff Lopez were erroneously misclassified as managerial, exempt employees.  A similarly situated group of potential plaintiffs exists for hourly-wage employees, but not for salaried employees.  The court will consider severing the Plaintiffs' managerial misclassification claims into a separate lawsuit if and when the district court enters an Order Adopting this Report and Recommendation.

**B.  Defendants Oppose Conditional Certification on Several Grounds**

The Defendants have articulated their opposition to conditional certification in their Response.  Doc. No. 38.  The substance of each argument will be addressed below.

**1.   Breadth of the Potential Class**

The Defendants argue that the Plaintiffs' proposed class is overbroad because it "would include any and all employees, current and former, exempt and non-exempt, all job duties and

payment practices from any restaurant owned, operated, supervised or managed by the defendants." *Id.* at 3.  The Defendants do not believe a class this broad would be comprised of employees who are "similarly situated in terms of job requirements and payment practice." *Id.* at 2.  The Defendants cite to *Garcia* to show how the Plaintiffs' proposed notice is overbroad.  *Garcia v. Champion Glass, LLC*, No. SA-12-CA-0703-FB, 2013 WL 12106226, at *4 (W.D. Tex. Mar. 27, 2013).  The undersigned agrees that the Plaintiffs' initial proposed notice was overbroad, but this report recommends a notice that has been tailored to fit the pleadings, affidavits, and applicable law.  Consistent with *Garcia* (*Id.*), the notice included with this report only applies to IHOP restaurants owned by Defendant Nazarian, and it does not include any other businesses owned by Defendant Nazarian nor any IHOP restaurants owned by other individuals.  Consistent with *Garcia* (*Id.*), the notice is only effective for non-exempt, hourly employees and not exempt, salaried employees.

### 2.   Existence of Similarly Situated Employees to Opt In

The Defendants argue that the Plaintiffs have failed to meet their burden to show other similarly situated employees desire to opt into this lawsuit, and they make several arguments in support.  *Id.* at 5.  First, the Defendants argue that Plaintiff Lopez has submitted conflicting affidavits in two separate lawsuits, and this somehow negates her testimony in this case.  *Id.* However, submission of conflicting affidavits does not mean that her affidavits for this case are wholly without merit, nor does it mean that the Plaintiffs' *other* evidence is insufficient to show other similarly situated employees exist.

Second, the Defendants implicitly argue that the Plaintiffs have failed to meet their burden because the Defendants have submitted affidavits concerning an alternative theory of how the

pseudonym scheme originated.  *Id.* at 6.  The Defendants' evidence creates issues of fact, but the Defendants' affidavits do not undercut the Plaintiffs' evidence that other similarly situated employees wish to opt into this lawsuit.

Third, the Defendants argue Antonio Lopez's consent to join this lawsuit is not probative because of his familial relationship with Plaintiff Gissela Lopez and alleged conspiracy with her to defraud the Defendants.  *Id.*  Once again, the Defendants are assuming that conflicting or allegedly suspect evidence is somehow dispositive in their own favor.  Mr. Lopez's consent to join the suit is simply evidence that individuals aside from the original plaintiffs desire to join this lawsuit.  His motivations for doing so do not negate his participation at this point.  The Defendants do not cite to any authority requiring a court to consider bias or prejudice in judging the credibility of a potential plaintiff's desire to opt in.  Additionally, Priscilla Lewis' affidavit expressing her desire to join the lawsuit supports the Plaintiffs' belief that other employees exist who want to opt in, so Mr. Lopez is not the only one with such a desire.  Doc. No. 46, Tab 5, at 2.

Fourth, the Defendants argue that the Plaintiffs are unsupported in their belief that other employees desire to opt into the lawsuit (Doc. No. 38, at 6), and the Defendants point to the evidence that fifty of the Defendants' employees have submitted affidavits saying they do not want to opt in.  *Id.* at 5, Ex. 2.  The Defendants have not provided information confirming that these fifty affidavits account for the entire pool of possible plaintiffs, so it is possible that scores or even hundreds of other potential plaintiffs might exist.  Antonio Lopez decided to opt in, and Priscilla Lewis indicated she desires to do so.  The Plaintiffs have also named other individuals whom they know worked under the pseudonym scheme.  Thus, the Plaintiffs have provided more than just their subjective beliefs—they have supported their assertions that other employees may want to

14

opt in.

Finally, the Defendants argue that the Plaintiffs' First Amended Complaint (Doc. No. 12) does not establish "a reasonable basis for crediting Plaintiffs' assertion that aggrieved individuals exist."  Doc. No. 38, at 7.  In deciding on a motion to conditionally certify a class, "[t]he court's decision is often based only on the pleadings and affidavits that have been submitted."  *Sedtal*, 2009 WL 2216593, at *3 (citing *Mooney*, 54 F.3d at 1213).  The affidavits submitted by the Plaintiff are sufficient, even if the Defendants are assumed to be correct that the First Amended Complaint itself is insufficient.

### 3.   Challenging the Similarity of "Similarly Situated" Employees

The Defendants argue that the Plaintiffs have not sufficiently established that the potential plaintiffs are similarly situated concerning their payment provisions and job requirements.  Doc. No. 38, at 7.  However, the pleadings and affidavits sufficiently describe a pseudonym scheme designed to deny overtime wages to hourly-wage workers.  Accordingly, the Plaintiffs have sufficiently established the potential plaintiffs are similarly situated concerning their payment provisions as hourly employees of the Defendants.

The Defendants' challenge to individuals having similarly situated job requirements merits further analysis.  The Defendants are correct that the Plaintiffs' affidavits lack specificity about the precise job requirements/roles of all known and unknown potential plaintiffs.  Even the affidavits from Plaintiff Lopez (Doc. No 30. App., Ex I) and Plaintiff Reyes (*Id.* at Ex. J) naming eleven particular individuals whom they know worked under the pseudonym scheme do not address the particular jobs of those individuals.  However, the overall details and context of the Plaintiffs' affidavits provide sufficient information to determine which job requirements/roles to

which they refer.  Plaintiff Reyes was primarily a waitress, and she was also involved with "cooking, food preparation, waiting and bussing tables" while she was a manager.  *Id.* at Ex. A. Plaintiff Lopez, as a manager, was involved with "cooking, waiting tables, bussing tables, doing kitchen prep work, cleaning…."  *Id.* at Ex. F.  Plaintiff Oscar Atonal is identified in the pleadings as a cook.  Doc. No. 12, at 4.  Odin Campos was a busboy and cook.  Doc. No. 30, App., Ex. H. Each affidavit mentioned above describes job roles that involve preparing food, serving food, or cleaning up after food service.  Thus, when these individuals claim that their coworkers were also subject to the same scheme to avoid paying them overtime based on their hourly wages, it is implicit that they are referring to other workers involved with similar roles of preparing food, serving food, or cleaning up after food service.  Using the fairly lenient standard appropriate to the notice stage, the undersigned is satisfied that the Plaintiffs have shown the potential plaintiffs are similarly situated in their job requirements.

Additionally, it seems clear that the Defendants know which kinds of employees the Plaintiffs are trying to identify as similarly situated.  The Defendants have preemptively submitted affidavits of twenty-three servers, ten cooks, nine combos (combos are dishwashers who also bus tables and clean the restaurant), four hosts, one trainer of servers and hosts, two managers (hourly employees), and one server/manager (hourly employee).  Doc. No. 38, Ex. 2.  The affidavits are statements by the affiants that they were not paid under a pseudonym scheme, and they do not want to opt into the instant lawsuit.  *Id.*  Interestingly, all of these fifty individuals—with the possible exception of two managers—appear to be involved with food preparation, food service, or cleanup after food service.  Thus, it seems fairly clear that the Defendants have interpreted the Plaintiffs' motion as an attempt to certify a class of employees involved with food preparation,

food service, or cleanup related to food service at the Defendants' restaurants, and the undersigned interprets the Plaintiffs' motion in the same manner.

### 4.   Evidence Employees Desire to Opt In

The Defendants argue that the Plaintiffs "have failed to present competent evidence that" other current or former employees "would actually opt in given the opportunity." *Id.* at 14. Priscilla Lewis, a server and manager at Bona 1900, Inc., indicated she would like to join the lawsuit if it is certified as a class action. Doc. No 46, Tab 5, at 2. Additionally, Antonio Lopez signed a consent form to opt into this lawsuit. Doc. No. 27. Thus, the Defendants are incorrect because the Plaintiffs have presented competent evidence that other individuals desire to opt in. The Defendants attack Priscilla Lewis' affidavit by claiming it fails to provide any details of her job duties, it does not indicate she worked under a pseudonym, and it does not allege the Defendants denied her overtime wages. Doc. No. 49, at 3. However, Ms. Lewis did indicate she was a server and manager at the Defendants' restaurant, which is sufficient at this stage. Ms. Lewis' refusal to work under a pseudonym does not mean she was not denied overtime wages through some other means (through working off-the-clock, for example), so this does not make her affidavit less competent. The Defendants are correct that Ms. Lewis has not specifically alleged how the Defendants denied her overtime wages, however her affidavit does not have to perfectly spell out her entire claim against the Defendants yet. The affidavit is competent evidence at this point in the case because Ms. Lewis has personal knowledge of the factual issues underlying this lawsuit, she was a similarly situated employee of the Defendants, and she desires to opt into a suit alleging denial of overtime wages. Thus, the Plaintiffs have provided competent evidence that other individuals desire to join the suit.

### 5.  Challenging a Single Decision, Policy, or Plan was in Place

The Defendants argue that the Plaintiffs "themselves are not similarly situated to each other as their job duties and payment provisions vary significantly, and because the Plaintiffs are not victims of a single decision, policy, or plan infected by discrimination." Doc. No. 38, at 16.  The undersigned does not rule on whether the managerial misclassification claims of Plaintiffs Lopez and Reyes are similarly situated to Plaintiff Atonal and his allegations of off-the-clock non-payment and payment under a pseudonym and Plaintiff Reyes' pseudonym scheme claims. Deciding this issue is unnecessary because the Plaintiffs have not alleged any other individuals aside from Plaintiffs Lopez and Reyes were misclassified as managerial, salaried employees.  The conditional class certification is proceeding only for hourly-wage employees, not salaried employees.  The undersigned does find, however, that Plaintiffs Reyes and Atonal are similarly situated to one another for their claims related to their hourly-wage employment.

The Defendants' argument that the Plaintiffs are not victim of a single decision, policy or plan requires further analysis.  The Plaintiffs have substantially alleged that Plaintiffs Reyes and Atonal were denied overtime wages by being forced to work off-the-clock and/or by the pseudonym scheme.  These methods of denying overtime wages were the alleged result of the singular policy and plan of the Defendants to deny overtime wages.  Though forcing individuals to work off-the-clock and paying workers under pseudonyms are obviously two different *methods* of accomplishing the denial of overtime wages, the denial of overtime wages itself is the alleged policy and plan in place by the Defendants.  As such, the Plaintiffs have alleged that current and former hourly workers of the Defendants were victims of a single decision, policy, or plan to deny overtime wages.

### 6.   Grounds to Issue Notice to All of Defendant Nazarian's Restaurants

The Defendants argue that conditional certification, if granted, should be limited to Defendants Bona 1900, Inc. and Bona 1372, Inc. because the "Plaintiffs fail to present any evidence of any employee at any of the other IHOP locations that were similarly situated and desire to opt-in to this lawsuit." *Id.* at 18.  However, beyond Defendants Bona 1900, Inc. and Bona 1372, Inc., the Plaintiffs have provided "substantial allegations that the putative class members" at the Defendant Nazarian's other IHOP restaurants "were victims of a single decision, policy or plan." *Tice*, 826 F. Supp. 3d at 995.

All of the following allegations and evidence support the existence of a single policy or plan to avoid paying overtime at all of Defendant Nazarian's IHOP restaurants: Defendant Nazarian's verbal instructions to managers to "avoid paying employees overtime" (Doc. No. 30, App., Ex. A), Area Supervisor Jesus Reyna's implementation of the pseudonym scheme (*Id.*), Mr. Reyna offering to procure a new identity for Priscilla Lewis (Doc. No. 46, Tab 5, at 1), Mr. Reyna responding to Ms. Lewis with "mind [your] own business" when she notified him of paychecks being issued under the pseudonym scheme (*Id.*), Defendant Nazarian's non-response when Ms. Lewis notified him of the existence of the pseudonym scheme (*Id.*), the Baytown IHOP manager's "packet of false social security numbers" (Doc. No. 30, App., Ex. I), the Baytown IHOP manager providing false Social Security and Permanent Resident cards to employees (*Id.*), and one person— Defendant Nazarian's employee Minnie Longoria, head of human resources—tracking and recording the employment data for employees at all seven IHOP restaurants Defendant Nazarian owns.  Doc. No. 38, Ex. 3.  Thus, the single policy or plan by Defendant Nazarian allegedly originated outside of the Bona 1900, Inc. and Bona 1372, Inc. IHOP locations by the actions and

words of Defendant Nazarian himself, Area Supervisor Jesus Reyna, and the Baytown IHOP manager.  The Plaintiffs have substantially alleged employees of Defendant Nazarian's other IHOP restaurants are also affected by the policy or plan.

### 7.   The Breadth of the Plaintiffs' Request for Information

The Defendants argue that the Plaintiffs' proposal requests too much personal information about employees, and the Defendants would like the court to limit disclosure of employee information to names and addresses only.  Doc. No. 38, at 19-20.  The Plaintiffs, in their Reply, are amenable to initially excluding employee dates of birth and social security numbers, and the Plaintiffs—through their affirmative citation of *Diaz*—implicitly agree that job titles are not necessary for an in initial attempt at providing notice to putative class members.  Doc. No. 46, at 29.  However, the parties still disagree about telephone numbers and email addresses.  Doc. No. 38, at 18.  Consistent with *Diaz*, it is appropriate in this case for the Defendants to provide telephone numbers and email addresses.  *Diaz v. Applied Machinery Corp.*, No. H-15-1282, H-15-2674, 2016 WL 3568087, at *11 (S.D. Tex. June 24, 2016) (holding full names, email addresses, mailing addresses, telephone numbers, and dates of employment are not "unduly burdensome or invasive, and are appropriate and necessary to further the broad remedial purposes of the FLSA by providing notice to both current and former employees.").  Thus, the Defendants must provide the full names of employees, last known mailing addresses, telephone numbers, email addresses, and dates of employment.  However, the employees' dates of birth, social security numbers, and job titles do not need to be provided at this time.

The Defendants also challenge the Plaintiffs' request that notice be posted in the Defendants' restaurants as superfluous and unreasonable given that notice can be mailed to all

current employees.  *Id.* at 20.  The Defendants do not cite to any Fifth Circuit cases, but they do cite to an easily distinguishable case from the District of Colorado.  *Id.*  In *Darrow*, the plaintiffs failed to respond to the defendants' contention that posting notice inside the defendants' stores was unreasonable and superfluous.  *Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2012 WL 638119, at *7 (D. Colo. Feb. 28, 2012).  In the instant case, the Plaintiffs have responded with several cogent arguments to the Defendants' contention that posting notice in the IHOP restaurants is superfluous and unreasonable.  First, "posted notice in the workplace is commonly used" (Doc. No. 46, at 29), and this is illustrated by the numerous cases cited in the Plaintiffs' original motion.  *See* Doc. No. 30, at 14.  Second, the Defendants' voluntary accumulation of fifty affidavits from its current employees demonstrates that the Defendants are willing to discuss this lawsuit—or at least the underlying facts and issues of this lawsuit—in the workplace with its current employees.  Doc. No. 46, at 30.  Employee affiants and all others who have not yet signed affidavits should be made aware of their "rights and protections under the FLSA" by an appropriate and neutral notice (*Id.*), and it is appropriate for such employees to be informed of these rights and protections in the same location (i.e. the workplace) where the Defendants sought to have such employees sign affidavits that might limit or complicate their ability to recover under the FLSA. Third, the burden or expense of posting notice is low because the notice is "approved in form and substance by the Court," and the Plaintiffs will provide the Spanish translation.  *Id.*  Additionally, the burden of posting notice will be considerably lower than the burden the Defendants voluntarily assumed by obtaining (and perhaps even drafting) fifty affidavits from their employees already. *Id.*

### C.  Changes to the Plaintiffs' Proposed Notice

The Defendants make several specific challenges to the language in the Plaintiffs' proposed notice to the class.  Doc. No 38, at 20-24.  The Plaintiffs indicate that they "are agreeable to working with counsel for the Defendants to draft mutually acceptable language."  The undersigned orders that the parties must confer and submit proposed language to the court within seven (7) days of this order.  To give the parties guidance for their conference, the Defendants' objections are addressed below.

#### 1.  Definition of the Class

The Defendants argue the Plaintiffs' definition of the putative class is excessively broad. *Id.* at 20.  To a certain extent, the undersigned agrees with the Defendants.  This Report and Recommendation altered the language to specify that the denial of overtime wages is the employment policy/practice at issues.  The parties should use the construction in this Report.

#### 2.  Limitations Period

The Defendants argue that the Plaintiffs incorrectly listed the limitations period in its initial proposed notice.  *Id.* at 21.  The Plaintiffs have agreed "that the appropriate date is three years prior to the date the collective action is certified by the Court."  Doc. No. 46, at 31.  Thus, there is no longer any apparent dispute about the limitations period.

#### 3.  Discovery Obligations

The Defendants argue that the "Plaintiffs' proposed notice should advise putative class members that they may be required to participate in discovery…."  Doc. No. 38, at 21.  The Plaintiffs did not respond to the substance of the Defendants' argument.  Doc. No. 46, at 31. Consistent with *Behnken* and the other cases cited by the Defendants (Doc. No. 38, at 21), the

22

revised notice proposal should include a brief sentence notifying putative class members that they may be required to participate in discovery, including responding to written questions, appearing for depositions, and/or testifying in court.  *See Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 524 (N.D. Tex. Feb. 14, 2014) ("Because plaintiffs do not give any reason why such language would be inappropriate, and courts routinely approve of such language," the court sustained the defendant's objection to include additional language regarding responses to written discovery.).

### 4.  Responsibility for Costs and Expenses

The Defendants argue that the Plaintiffs' proposed notice fails to advise the putative class members that they may have "personal financial liability" if the Defendants prevail on their counterclaims.  Doc. No. 38, at 21-22.  Though the Defendants have not cited any authority showing that disclosure of potential financial liability is *required*, the Defendants have supported their contention with a portion of *Behnken* relevant to putative class members receiving notice about the possibility they may be required to pay a proportional share of taxable court costs. *Behnken*, F. Supp. 2d at 524.  Again, the Plaintiffs did not respond to the substance of the Defendants' argument and merely reiterated their confidence that the Defendants' counterclaims "will be rendered moot upon the Court's dismissal of their improperly asserted counterclaims." Doc. No. 46, at 31.  Courts are divided on the question of whether notice about potential costs to the plaintiffs must be included in the notice.  *See Reyes v. Quality Logging, Inc.*, 52 F. Supp. 3d 849, 853-54 (S.D. Tex. Oct. 10, 2014) (discussing *Behnken* and cases with other approaches, the court ultimately declined to follow *Behnken*.).  Interestingly, the Defendants previously cited *Whitehorn* affirmatively in support of their argument about the notice including information about

potential participation in discovery (addressed in the section directly above), but *Whitehorn* joins cases like *Quality Logging* in rejecting the approach taken in *Behnken* concerning liability for costs. *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, at 451 (S.D.N.Y. Feb. 8, 2011) (denying the defendants' request to inform potential plaintiffs of potential responsibility for counterclaims or other costs because of concerns about "an in terrorem effect that is disproportionate to the actual likelihood" that such costs will significantly occur.) (citing *Guzman v. VLM, Inc.*, No. 07-CV-1126(JG)(RER), 2007 WL 2994278, at *8 (E.D.N.Y. Mar. 2, 2008)). "Given the involvement of likely unsophisticated opt-in plaintiffs" in the instant case, the undersigned follows the approach of cases like *Quality Logging* to recognize the disproportionate "*in terrorem* effect" of providing such notice would "outweigh[] the likelihood" such costs will significantly impact the instant case. *Quality Logging*, 52 F. Supp. 3d, at 854. Thus, the revised notice does not need to contain references to counterclaims or court costs, but it is the responsibility of class counsel to render class members appropriate advice on such matters.

### 5.   Reminder Notice

The Defendants argue that the Plaintiffs' request to mail follow-up postcards to putative class members should be denied. Doc. No. 38, at 22. The Plaintiffs explain their request "is intended solely to assure that putative class members are afforded notice of the lawsuit and of their legal rights." Doc. No. 46, at 32. Though the Plaintiffs have a noble goal, they have failed to "identif[y] any reason why a reminder notice [is] *necessary* under the particular circumstances of the case." *Garcia v. TWC Admin., LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *4 (W.D. Tex. Apr. 16, 2015) (emphasis added). Thus, at this time the undersigned denies the Plaintiffs' request to send follow-up postcards.

### 6.   Language on How to Participate

The Defendants argue that the Plaintiffs' proposed notice does not properly inform putative class members that they may contact their own attorneys regarding the case.  Doc. No. 38, at 23. The Plaintiffs responded that such a paragraph did exist in the original proposed notice, but they have moved the paragraph's location within the most recent version of the proposed notice to ameliorate the Defendants' concerns.  Doc. No. 46, at 32.  This change by the Plaintiffs appears to render the Defendants' concern moot.  The parties should resolve any lingering disagreements on this matter during their conference to draft the proposed notice language.

### 7.   Stating Defendants' Dispute Claims

The Defendants argue that the Plaintiffs failed to mention the Defendants' dispute of the Plaintiffs' claims in the original proposed notice.  Doc. No. 38, at 23.  The Plaintiffs have attempted to correct this omission and also show a willingness to confer with the Defendants to draft new language.  Doc. No. 46, at 32-33.  The parties may do so when they confer.

### 8.   Statements of the Plaintiffs' Allegations

The Defendants argue that the Plaintiffs' allegations in the proposed notice contain "an excessive detailed narrative description of Plaintiffs' claims.   Only a brief description" is appropriate.  Doc. No. 38, at 23.  The Plaintiffs dispute this argument.  Doc. No. 46, at 33.  The undersigned finds that the paragraphs of the proposed notice detailing the general nature of the lawsuit (Doc. No. 46, Tab 6, at 2, ¶1), Plaintiff Reyes' claims (*Id.* at ¶2), and Plaintiff Atonal's claims (*Id.* at 3, ¶1) are sufficiently neutral and brief descriptions of the nature of the allegations. However, the proposed notice should remove the paragraph explaining the allegations of Plaintiffs

Reyes and Lopez about managerial misclassification (*Id.* at ¶2) because of the undersigned's recommendation to conditionally certify a class of only hourly-wage employees.

### 9.   Notice Period

The Defendants argue that the Plaintiffs' proposed notice "is insufficient because it fails to limit the notice period." Doc. No. 38, at 24.  The Plaintiffs subsequently suggested a seventy-five (75) day notice period.  Doc. No. 46, at 33.  The Defendants' Sur-Reply did not address the proposed notice period.  Seventy-five (75) days initially appears reasonable to the undersigned.

### D.  Newspapers, Radio, and Television

In their Reply, the Plaintiffs asked the court to use its discretion to allow the Plaintiffs to provide notice "through publication in… newspapers in the Houston and Beaumont, Texas, areas as well as through broadcast on… radio and/or television stations in these geographic areas." *Id.* at 34.  The Defendants oppose these requests.  Doc. No. 49, at 5.  At this time, the undersigned does not exercise the court's discretion to allow notice through newspapers, radio, or television. If the mail and email methods of providing notice to putative class members fail, then the Plaintiffs may request the court to consider newspaper, radio, television, or other means at that time.

## IV.  Recommendation

The undersigned recommends that the Plaintiffs' "Motion to Conditionally Certify an FLSA Collective Action and Send Notice to the Class" (Doc. No. 30) be granted in part and denied in part.

The court should grant conditional certification under 29 U.S.C. § 216(b) for a class defined as follows:

To:

All current and former hourly-wage employees employed on or after [insert date three years before date the collective action is certified by the Court's Order Adopting] at International House of Pancakes restaurants owned, operated, or controlled by Hnreck Nazarian (a/k/a Nazarian Enterprises).

Re:

This is a Collective Action Lawsuit for the alleged non-payment of overtime wages brought under the Fair Labor Standards Act against Bona 1372, Inc., Bona 1900, Inc. and Hnreck Nazarian (a/k/a/ Nazarian Enterprises d/b/a IHOP).

The court should order the Defendants to provide the Plaintiffs, under oath, with the full names of employees, last known mailing addresses, telephone numbers, email addresses, and dates of employment within fourteen (14) days of the district court judge's Order Adopting this Report and Recommendation.

The court should order that the Plaintiffs must attempt to mail the notice and consent forms to all potential class members within fourteen (14) days of the receipt of names and addresses of putative class members from the Defendants.

The undersigned **ORDERS** that the parties must confer and file a revised proposed notice within seven (7) days of the date of this Report and Recommendation.  To be clear, this order is not a recommendation that requires an Order Adopting from the district court judge for it to take effect—this is a pretrial order taking immediate effect because it is within the authority of a magistrate judge to make such an order (FED. R. CIV. P. 72(a)) and the undersigned has been referred all pretrial proceedings for the instant case.  Doc. No. 29.

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this Report and Recommendation.  Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3)

be served and filed within fourteen (14) days after being served with a copy of this report; and (4) be no more than eight pages in length.  *See* 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(2); Local Rule CV-72(c).  A party who objects to this report is entitled to a de novo determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SIGNED this 17th day of October, 2017.

_____
Zack Hawthorn
United States Magistrate Judge