IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| Jessica Reyes and Gissela Lopez, On Behalf of Themselves and Similarly Situated Employees | § § § § | CIVIL ACTION NO: 1:17-CV-00016 |
| Plaintiffs, | § § § | |
| VS. | § § § | **JURY DEMANDED** |
| Bona 1372, Inc., Bona 1900, Inc., and Hnreck Nazarian a/k/a Nazarian Enterprises d/b/a IHOP ("International House of Pancakes") | § § § § § § | |
| Defendants. | § | JUDGE MARCIA A. CRONE |

**AGREED JOINT MOTION TO APPROVE SETTLEMENT**

COME NOW, all parties, file this their *Agreed Joint Motion to Approve Settlement*, and would respectfully show unto the Court the following:

1.      Plaintiffs Jessica Reyes and Gissela Lopez filed this lawsuit as an FLSA collective action on January 17, 2017[1]. Plaintiff Oscar Atonal was later added through an amended complaint[2]. Pursuant to the order of this Court conditionally certifying this matter as a collective action[3], notice was provided to approximately 4,500 current and former employees. There are currently 55 claimants, including the named Plaintiffs and opt-ins, before the Court.

2.      The parties participated in a mediation with Mediator Kip Glasscock, on June 7, 2018. With the continued assistance of Mr. Glasscock, a settlement was reached the following week.

---

[1] Document 1.
[2] Document 12.
[3] Document 69.

3.      The parties will show through this motion[4] that the settlement is fair and reasonable and reflects a reasonable compromise of issues as to which there is a bona fide dispute. As shown in further detail herein, the Plaintiffs contend that they worked overtime and other hours for which they were not properly compensated. The Defendants contend that they at all times paid all wages and overtime wages owed and that the Plaintiffs' claims are illegitimate and are the product of fraud, breach of fiduciary duty, conspiracy and conversion, [5]. The Defendants sued Third-Party Defendant Gerardo Lomeli for alleged fraud and on additional related tort theories[6].

4.      The settlement agreement calls for Defendants to pay the aggregate sum of ████████, which includes Plaintiffs' attorneys' fees and litigation expenses. The agreement further requires the Defendants to dismiss all claims against Third-Party Defendant Lomeli. In exchange, the Plaintiffs and Lomeli will release all FLSA claims against Defendants.

5.      The amount in compensation to be allocated to each Plaintiff and opt-in Plaintiff based on the details of each employee's particular claim is set forth in the chart attached hereto as Exhibit "A". The amount of litigation expenses to be reimbursed to Plaintiffs' counsel is ████████. The amount of attorneys' fees to be paid to Plaintiffs' counsel is ████████. As shown herein, the amount of attorneys' fees to be paid to Plaintiffs' counsel reflects a very significant and substantial reduction from the amount of fees earned by Plaintiffs' counsel as determined under the Lodestar method.

---

[4] This agreed joint motion contains the parties' candid statements regarding the positions taken by the parties in this litigation. All parties agree and stipulate that in the event the settlement is not approved and the case proceeds to further litigation and/or trial, this motion and all statements made herein shall not be used by any party for any purpose.
[5] Documents 205 and 206.
[6] Document 186.

## A. The Settlement Reflects the Resolution of a Bona Fide Dispute.

6.      This settlement agreement reflects a reasonable compromise over issues that are actually

in dispute. *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354 (11th. Cir. 1982).

Although as a result of the extensive motion practice undertaken in this lawsuit the Court is aware

of the factual background and the contested issues, the parties will outline the major points of

contention underlying the lawsuit and claims.

7.      In 2016, a prior FLSA unpaid overtime claim was settled. The plaintiff in that matter,

Scarlet Banegas, worked at Defendants' Beaumont, Texas, IHOP restaurant known as IHOP

#1900. In connection with that case, Defendants secured affidavits from Gerardo Lomeli and

Gissela Lopez[7] to the effect that each of them, acting alone, had allowed Scarlet Banegas to work

under multiple names and that no other employees ever engaged in this practice. These affidavits

are a major point of contention as Lomeli and Lopez contend that the affidavits are not true and

that they were instructed by their employer to sign them. Defendants contend that the affidavits

are true and are evidence of fraud and other torts on the part of Lomeli and Lopez.

8.      Subsequently, Plaintiffs Jessica Reyes and Gissela Lopez ( who was later terminated and

claimed the referenced affidavit was false and procured by fraud, coercion or duress), approached

Plaintiffs' counsel seeking protection of their FLSA rights. As alleged in the pleadings, Jessica

Reyes claims to have been denied overtime wages by being required to work under another name

when she exceeded 40 hours in a week and to have been required to work off the clock. Gissela

Lopez claims to have been paid as a salaried manager although her job duties and responsibilities

did not qualify her as an exempt employee under the FLSA. Defendants denied these allegations.

---

[7] Document 21-1.

9.      This lawsuit was filed on January 17, 2017. Subsequently, Plaintiff Oscar Atonal was added to the lawsuit through an amended complaint. Atonal claimed to have been required to work under his own name and under three additional names – as well as off-the-clock – as part of what Plaintiffs' allege is a systematic plan by Defendants to avoid paying employees overtime wages. Defendants deny these allegations.

10.     Plaintiffs' filed their motion to certify this lawsuit as a collective action[8] on May 4, 2017. This lawsuit was conditionally certified pursuant to the Magistrate's recommendation issued on October 17, 2017, and the Court's order of November 6, 2017. Following the mailing and posting of notice, additional employees opted into the case. The affidavits of numerous employees, filed on February 6, 2018, included allegations that employees at each of Defendants' Texas IHOP Restaurants were denied lawful FLSA wages[9].

11.     The depositions of Defendants' Area Supervisor Jesus Reyna and Head of Human Resources Minnie Longoria were taken on October 2, 2017, and September 29, 2017, respectively. Both witnesses denied the existence of a company-wide plan of the Defendants to deny employees overtime or other wages.

12.     The positions of the Plaintiffs and the Defendants in this matter are polar opposites. Plaintiffs contend that Defendants required employees to at times work under other names so that their hours would not exceed 40 hours in a week under any one name and further required employees to work off the clock (and thus with no pay at all) to perform tasks such as rolling silverware and cleaning the restaurants at the end of their shifts. Defendants deny that any of this

---

[8] Document 30.
[9] Document 158-1, Exhibits "V" through "FF".

occurred and additionally contend that any employee who makes such a claim is committing fraud by so claiming.

13.    With respect to each additional claim of each Plaintiff and Opt-In Plaintiff, various other disputes exist.  Some may be, in whole or in part, barred by limitations, subject to Plaintiff's contested and uncertain arguments for extensions...  Some claims may be or are subject to credits for tips or overpayments.  Additional details regarding the evaluations of claims, based upon documentary evidence (including but not limited to time records, payroll records, personnel records, and schedules, where available) and the recollections of individual Plaintiffs and Opt-In Plaintiffs, are included in the allocation table attached as Exhibit "A".

14.    The above factors demonstrate that a bona fide dispute exists between the parties as to the Defendants' liability under the FLSA. Accordingly, the parties would jointly show to the Court that this requirement is satisfied.

### **B. This Lawsuit Has Been Vigorously Litigated.**

15.    The Defendants raised their defenses of fraud, limitations, civil conspiracy, and other tortious conduct on the part of Plaintiffs in their original answer, asserted counterclaims against the named Plaintiffs, and relied upon these defenses to oppose certification. In response, the Plaintiffs sought through six successive motions to dismiss, filed over a period of several months, to have the counterclaims dismissed. Plaintiffs' motion to dismiss Defendants' counterclaims was denied.

16.    The Defendants took the depositions of Plaintiffs Jessica Reyes and Gissela Lopez, and the deposition of Plaintiff Oscar Atonal was started but not completed. Defendants also took the deposition of Third-Party Defendant Gerardo Lomeli, prior to naming him as a Third-Party Defendant. Plaintiffs have deposed Defendants' Area Supervisor Jesus Reyna and Defendants'

Head of Human Resources, Minnie Longoria. As of the date the settlement was reached, discussions were underway to schedule the depositions of numerous opt-in Plaintiffs as well as those of additional supervisory employees of Defendants and Defendants' corporate representatives.

17.     Discovery has also been conducted with respect to Defendants' franchisor, Dine Brands Global f/k/a DineEquity, Inc. After answering and objecting to written discovery, Dine Brands Global had agreed to present a witness, Toni Shoplik, for a deposition to be scheduled for August of 2018.

18.     Extensive written discovery and document production has been completed in this lawsuit. Over 28,000 individual documents have been produced in discovery, primarily by Defendants. These documents consisted of various business records and other materials that were necessary for Plaintiffs to defend against counterclaims and otherwise contest the defenses asserted by Defendants.

19.     Defendants maintained and produced clock-in/clock-out records for all non-salaried employees. These reports, known as "B-50" reports, reflect the hours worked by each employee who exists within Defendants' record-keeping system. The reports were produced, were examined by counsel, were used to determine the amount of unpaid overtime for employees who worked under multiple names, and to verify the employment dates of the opt-in Plaintiffs. The personnel records of all Plaintiffs and opt-in were also produced and examined. These records were relied upon in determining the settlement allocations set forth in Exhibit "A".

20.     Plaintiff's motion for conditional certification as a collective action was vigorously contested, with both parties compiling substantial evidence and affidavits and challenging and contesting the evidence proffered by the respective opponent.  The parties vigorously contested

and disputed the facts, the credibility, veracity and reliability of witnesses and the import of various documents in connection with most salient legal issues in the case, including the propriety of the collective action and the existence of, extent of and responsibility for any failures to pay minimum wage or overtime.[10]

21.    Through investigation, Plaintiffs learned that Defendants operate a restaurant called Miro in Los Angeles, California. During the pendency of this lawsuit, Defendants acquired nine additional IHOP franchises in Ohio and Kentucky. Based on testimony from Minnie Longoria that her job duties with respect to these restaurants were the same as her job duties at the Texas IHOPs and testimony that Defendants' Area Supervisor Jesus Reyna had at least some contact with these restaurants, Plaintiffs moved the Court to expand the collective action class to include employees at those restaurants. However, as Plaintiffs could not identify any individual employees from those restaurants who wished to join the lawsuit, the motion was denied.

22.  The versions of the case proffered by the respective sides were categorically opposite. The Plaintiffs contended that Defendants systematically denied employees overtime wages and required employees to work off the clock. Defendants claimed that, as supported by the existence of records showing the payment of overtime to many employees, they had no such policy and that the Plaintiffs were simply trying to defraud them by seeking to be paid for hours they did not work and by falsely clocking in other non-working employees and collecting paychecks issued to non-working "ghost" employees.

23.    At the time mediation was held, the parties were in the process of scheduling numerous additional depositions. This case has been vigorously litigated, hotly contested, and the issues have

---

[10] The parties are able to provide numerous examples of the extent and vigorous adversarial contest waged between them, if the court desires further proof that this matter was hotly contested.  This is borne out, also, in the pleadings and filings made by both sides, of which the parties request the court take judicial notice.

been explored and examined in-depth by counsel for Plaintiffs, Defendants, and Third-Party Defendant Lomeli.

### C. The Settlement is Fair and Reasonable.

24.    The standards for assessment of whether a settlement is fair and reasonable were articulated by the Fifth Circuit in *Reed v. General Motors Corporation,* 703 F.2d 170 (5th Cir. 1983). As noted by that court, although the class-action settlement provisions of Rule 23 are not technically applicable to the settlement of FLSA collective action litigation, courts often look to these standards to evaluate FLSA settlements. The *Reed* factors include:

(1)    the existence of fraud or collusion behind the settlement;

(2)    the complexity, expense, and likely duration of the litigation;

(3)    the stage of the proceedings and the amount of discovery completed;

(4)    the probability of the plaintiffs' success on the merits;

(5)    the range of possible recovery; and

(6)    the opinions of class counsel, class representatives, and absent class members.

*Reed, supra,* 703 F.2d at 172.

25.    There is no indication or evidence whatsoever to suggest the existence of fraud or collusion. To the contrary, the parties have vigorously and contentiously litigated this case. The settlement was reached following extensive written discovery, depositions, and motion practice. Further, the settlement was reached only through the intervention and guidance of a skilled mediator. Further, the settlement was not reached on the day of mediation; rather, it was reached after an impasse had been declared by the mediator, who then took one last effort to explore a route to resolution through the agreed common fund to which the parties have now, reluctantly, agreed, after having the

opportunity to consider the cost, aggravation and uncertain result of further litigation relative to the cost of settlement at this time.

26.     This lawsuit currently has a trial setting/final conference date of June 9, 2019, approximately one year to the day from the date the settlement agreement was reached. The anticipated expense of another year of continued litigation and the time and expense associated with trial is large and was a major factor in the parties' decision to settle. Defendants intended to depose each of the 50+ remaining opt-in Plaintiffs and Plaintiffs had tendered to Defendants a list of over 20 Defense witnesses and representatives to be deposed. Depositions of Defendants' franchisor were also anticipated and were being scheduled. Additionally, both sides anticipated designating expert witnesses which would have required extensive expert witness discovery and depositions. This factor clearly militates in favor of approval of the settlement.

27.     The state of the proceedings are as described above – extensive discovery has been completed to date but significant discovery, including numerous fact witness depositions, expert discovery, as well as dispositive motion practice, remains and would be required to prosecute this lawsuit through trial.

28.     The parties strongly disagree on the Plaintiffs' chances of success on the merits. In summary, it cannot be said conclusively that any Plaintiff would prevail on the merits, as Defendants' evidence could persuade a jury that the claims are not legitimate. This uncertainty supports approval of the settlement, which will result in compensation to each of the Plaintiffs and opt-ins based on their amount of claimed uncompensated work and other factors unique to each claimant's circumstances, as generally summarized in Exhibit "A".

29.     The Plaintiffs' chances of success and potential recovery are also impacted by the determination of whether a two-year or three-year limitations period applies, and by Plaintiff's

argument for equitable tolling. . Without tolling, the claims of certain of the opt-in Plaintiffs would be barred. Under a two-year limitations period, the amount of recovery potentially available to all of the Plaintiffs and opt-ins would be diminished.

30.     One of the strongest factors militating in favor of settlement of these claims at this time is the range of possible recovery. Under the FLSA, the Plaintiffs' potential recovery is based upon the compensation each employee was wrongly denied. Another year or more of litigation will not increase the recovery to which each claimant is entitled. Additional litigation would increase the Defendants' potential exposure because recoverable litigation expenses and attorneys' fees would continue to accrue, but the individual Plaintiffs' potential recoveries would not increase. Were the Defendants' fraud theory to be accepted by the jury, the Plaintiffs would recover nothing. As noted above, without a finding that the Defendants' conduct was willful, the recovery period would be shortened from three years to two years, thus diminishing the potential recovery even if the Plaintiffs otherwise prevailed.

31.     Counsel for Plaintiffs agree and represent to the Court that this settlement represents the resolution of a bona fide dispute both as to liability and as to the amount of unpaid hours. Due to the uncertainty of the outcome, the additional time, expense and delay in receipt of actual compensation by the Plaintiffs should the case go to trial, any additional delays in receipt of compensation should the case be appealed following a trial, and the fact that further litigation will not increase the ultimate recovery received by any Plaintiff, it is the opinion of Plaintiffs' counsel that this settlement is fair and reasonable and should be approved.  See the declaration of Plaintiffs' counsel Travis Lynn Walden attached hereto as Exhibit D.  The affidavit of named Plaintiff and collective action representative Jessica Reyes stating her opinion that the settlement is fair and reasonable and should be approved is attached hereto as Exhibit "B".

32.     For all of the above reasons, the parties submit to the Court that the settlement is fair and reasonable in light of the *Reed* factors, and the parties jointly request the Court to approve the settlement.

### D. Plaintiffs' Counsel's Attorneys' Fees Should Be Approved.

33.     During approximately 17 months of litigation, which included by way of illustration and not limitation: investigation into the validity of the claims; propounding and responding to extensive written discovery; taking and defending depositions; attendance at hearings, conditional certification as a collective action; preparation and mailing of notice of the collective action to over 4,500 current and former employees; communications with opt-ins and potential opt-ins; evaluation of the claims of opt-ins and potential opt-ins; meetings with and obtaining affidavits from Plaintiffs and many opt-ins; numerous client meetings and conferences both in counsel's offices and in the field to discuss case strategy; work with and by Spanish-speaking counsel to interpret at meetings with clients and to translate documents including affidavits and the collective action notice into Spanish; seeking and obtaining court approval to file certain documents *in camera* which revealed the names of then-current employees working under multiple names; multiple deposition preparation sessions with Plaintiffs Jessica Reyes, Gissela Lopez, Oscar Atonal and with then non-party witness Gerardo Lomeli; preparation and analysis and organization of exhibits for taking the depositions of Defendants' representatives Jesus Reyna and Minnie Longoria; preparation for the deposition of Defendants' representative Robert Harris (deposition postponed due to lack of document production);  litigation over counterclaims and six serial motions to dismiss same (required because pleading amendments by Defendants following the first five such motions rendered those motions moot and raised new issues each time, requiring

new motions to dismiss); discovery disputes including Defendants' motion for protective order; meetings with witnesses and gathering affidavits to respond to the Chay affidavit issue; discovery directed to Defendants' franchisor, examination of over 28,000 documents; calculation of hours worked and wages owed to individual Plaintiffs based on detailed examination and comparison of daily "B-50 " clock-in/clock out records for employees working under multiple names over the three-year statutory period; examination and analysis of documents from Defendants' franchisor instructing franchisees to avoid overtime; examination and analysis of Defendants' financial records including weekly manager's reports and profit/loss statements to show that Defendants' restaurants such as IHOP # 1900 was profitable and high-performing; was adequately staffed and was not staffed by "ghost employees" as alleged by Defendants; examination and analysis of employee schedules and other documents contained on a former IHOP #1900 computer given to Gissela Lopez as salvage; negotiations with Defense counsel regarding production of this computer for copying of the hard drive by Defendants;  examining documents obtained by Defendants through numerous subpoenas to Plaintiffs' other employers; examining, investigating and responding via affidavit to Defendants' allegation that gym records showed that Jessica Reyes was checked in at a gym during work hours; a motion to expand the collective action; legal research underlying motions and responses to motions; drafting of pleadings and motions; analysis of issues with regard to whether expert witness evidence would be required; case evaluation for purposes of preparation for mediation; communication with Plaintiffs and opt-ins regarding the scheduling of depositions and the value of their claims for purposes of mediation; attendance at mediation and follow-up interactions with the mediator in furtherance of settlement; communications with Plaintiffs and opt-ins regarding the proposed settlement allocations; evaluation of the Lodestar amount of attorneys' fees, reduction of same through the exercise of "billing judgment;" and

preparation of this motion, Plaintiffs' counsel reasonably devoted at least 3,670 non-duplicative hours towards the prosecution of this lawsuit.

34.     The Plaintiffs and opt-ins included non-English speakers. Counsel Brian Plotts and Solomon Freimuth, both fluent in Spanish, provided necessary services by counseling and interacting with these Plaintiffs and opt-ins. These attorneys and Brian Plotts' associate attorneys and paralegals also translated documents from English into Spanish as required. Their expertise as bi-lingual attorneys was necessary as non-lawyer translators would not have the ability to communicate the nuance and legal meaning of certain terminology constituting legal terms of art.

35.     The law firm of WaldenReynard, PLLC, was lead counsel for the Plaintiffs for most of the pendency of the lawsuit. Mark Sparks and Jane Leger of The Ferguson Firm joined the Plaintiffs' team and were designated as lead counsel for the Plaintiffs in May of 2018. The billable hours worked by each firm for the Plaintiffs are as follows:

| | | |
|---|---:|---|
| WaldenReynard, PLLC | 3,342 | Hours |
| The Ferguson Firm | 50 | Hours |
| Brian L. Plotts | 257 | Hours |
| Solomon Freimuth | 21 | Hours |
| TOTAL | 3,670 | Hours |

36.     In order to effectuate the settlement and to allow the Plaintiffs and opt-ins to obtain a meaningful recovery, Plaintiffs' counsel have severely and drastically reduced their legal fees. Accordingly, rather than undertake an entry-by-entry "billing judgment" analysis, Plaintiffs' counsel have, for purposes of determining the Lodestar amount of fees, reduced the number of billable hours by 15%. This results in 3,119.5 hours of legal work following such downward adjustment.

37.    The resumes of each of Plaintiffs' attorneys, which detail their years of experience, are

attached hereto collectively as Exhibit "C". Plaintiffs would show, as per the affidavit of attorney

T. Lynn Walden, attached hereto as Exhibit "D," that the hourly rate of ▮▮▮▮ per hour is reasonable

for employment litigation work undertaken on a contingency basis in the Eastern District of Texas.

Accordingly, following the 15% "billing judgment" reduction, the Lodestar amount of Plaintiffs'

attorneys' fees is ▮▮▮▮▮▮▮▮.

38.    The terms of the settlement call for the sum of ▮▮▮▮▮▮ to be allocated to attorneys'

fees out of the ▮▮▮▮▮ settlement. Thus, as part of the settlement, Plaintiffs' counsel have

voluntarily reduced their adjusted Lodestar fees downward by approximately 76%.

39.    All of the legal work performed by Plaintiffs' counsel was reasonable and was necessary

to achieve a favorable settlement which allowed the Plaintiffs' and opt-ins to obtain a recovery.

40.    Although the amount being paid as attorneys' fees exceeds the amount allocated to the

Plaintiffs and opt-ins, such is often the case in FLSA litigation, where the amount of unpaid wages

would not justify the pursuit of litigation were attorney's fees not recoverable. In *Villegas v.

Regions Bank,* 2013 WL 76719 (S.D. Tex. 2013), the court found that attorneys' fees of $13,320.00

were reasonable in an FLSA case in which the wages recovered were $1,413.00. In that case, the

approved fees equaled 9.43 times the amount of recovered wages. In the instant case, the amount

of adjusted attorneys' fees equals 2.28 times the amount of recovered wages.

41.    The *Villegas* court applied the Lodestar method of fee calculation and considered the effect

of the factors outlined in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th

Cir. 1974). The *Johnson* factors include: (1) the time and labor required to represent the client or

clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the

legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary

fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

42.    None of the *Johnson* factors support a reduction in Plaintiffs' counsel's fees. This was a hotly contested lawsuit requiring extensive time and labor. Given that Defendants had affidavits from Lopez and Lomeli which militated against the Plaintiffs' claims from the outset, this case presented a novel and difficult factual scenario which Plaintiffs' counsel were required to navigate. The fee was contingent such that Plaintiffs' counsel assumed the risk of no recovery whatsoever had the outcome been unfavorable. Additionally, the results obtained were highly favorable to the Plaintiffs and opt-ins. Given that Plaintiffs' counsel drastically reduced their fees by 76.07% from the Lodestar amount in order to allow for a settlement which would afford compensation to the Plaintiffs and opt-ins, the *Johnson* factors would in no way support any further or additional reduction of fees.

### E. Plaintiffs' Counsel's Reimbursable Expenses Should Be Approved.

43.    Plaintiffs' counsel advanced all fees and expenses associated with this litigation. This amount totals ███████ as set forth in the itemized list of expenses attached as Exhibit "E" to this motion. As stated in the affidavit of T. Lynn Walden (Exhibit "D"), these fees and expenses were reasonable and were necessary to obtain a favorable settlement on behalf of the Plaintiffs and opt-ins.

## F. Allocation of Unclaimed Settlement Funds

44.    As of the filing of this motion, four Opt-In Plaintiffs have not returned signed Settlement Agreements to Plaintiffs' counsel.  Based upon this experience, Plaintiffs believe there may be some Plaintiffs or Opt-Ins who will not claim the settlement funds allocated to their claims.  All Plaintiffs and Opt-Ins assented to the representation of their interests by Plaintiffs' counsel and to be bound by any settlement when they executed, returned and filed their Consent to Join the case.  See form Consent to Join attached hereto as Exhibit F. In the event that a Plaintiff or Opt-In Plaintiff fails to sign and return the within 21 days of mailing this Order and the Settlement Agreement to the Plaintiff or Opt-In's last known address, the monies allocated to said Plaintiff or Opt-In shall be donated to the Jefferson County Bar Association Foundation, a 501(c)(3) non-profit entity, earmarked for the Foundation's pro bono program, said donation payment to be made by check on the twenty-second day after the mailing of this Order and Settlement Agreement to the Plaintiff or Opt-In. Pursuant to each Opt-In claimant's agreement to be bound to any resolution reached herein by the Plaintiffs, as set forth on the opt-in form executed by all Plaintiffs and Opt-Ins, such individuals should be bound by the terms of the Settlement Agreement and this Order, and such claims shall be dismissed with prejudice upon the funding of the settlement.

WHEREFORE, all parties to this lawsuit respectfully request the Court to approve the settlement of this lawsuit.

Dated: October 22, 2018.

Respectfully Submitted,

**THE FERGUSON LAW FIRM, LLP**

/s/ Mark C. Sparks
Jane S. Leger
State Bar No. 00788814
Mark C. Sparks

16

State Bar No. 24000273
350 Pine Street, Ste. 1440
Beaumont, Texas 77701
T. (409) 832-9700
F. (409) 832-9708
Email:  jleger@thefergusonlawfirm.com
Email:  mark@thefergusonlawfirm.com


**WALDENREYNARD, P.L.L.C.**

*/s/ David D. Reynard, Jr.*
T. LYNN WALDEN
State Bar No. 20674800
DAVID D. REYNARD, JR.
State Bar No. 00784836
Post Office Box 7486
Beaumont, Texas 77726
(409) 833-0202 Telephone
(409) 832-3564 Telecopier
Email: waldenreynard@wrtexaslaw.com


**ATTORNEYS FOR PLAINTIFFS JESSICA
REYES, GISSELA LOPEZ, AND OSCAR
ATONAL, ON BEHALF OF THEMSELVES
AND SIMILARLY SITUATED EMPLOYEES**

**KUCHLER POLK WEINER, LLC**

*/S/ CAROLYN D. ROCH*
Carolyn D. Roch
Attorney-In-Charge
Texas Bar No. 00791152
Fed I.D. #64109
2929 Allen Parkway, Suite 1520
Houston, Texas 77019
cdroch@kuchlerpolk.com
Telephone: (713) 588.0891
Facsimile: (713) 470.9768


**ATTORNEYS FOR DEFENDANTS**

**BRADLEY & STEELE**
3120 Central Mall Drive
Port Arthur, TX 77642
Tel: (409) 724-6644

17

Fax: (409) 724-7585

*/s/ Jill Swearingen Pierce*
Jill Swearingen Pierce
Texas Bar No. 00788498
Email address: jpierce@bradlaw.net

**ATTORNEYS FOR THIRD-PARTY
DEFENDANT GERARDO LOMELI**


## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System of the United States District Court for the Eastern District of Texas, which shall send notification of such filing to the following:

Carolyn D. Roch
Texas Bar No. 00791152
Kuchler Polk Weiner, LLC
2929 Allen Parkway, Suite 1520
Houston, Texas 77019
cdroch@kuchlerpolk.com
Telephone: (713) 936-4707
Facsimile: 713-470-9768

and

Jill Swearingen Pierce
Texas Bar No. 00788498
Bradley & Steele
3120 Central Mall Drive
Port Arthur, TX 77642
Tel: (409) 724-6644
Fax: (409) 724-7585
Email address: jpierce@bradlaw.net

*/s/ David D. Reynard, Jr.*
DAVID D. REYNARD, JR.


## CERTIFICATE OF CONFERENCE

This is an agreed Motion filed jointly on behalf of all parties. I have conferred with Carolyn Roch, counsel for Defendants, and Jill Swearingen Pierce, counsel for Third-Party Defendant. All parties agree with and join in the request that the settlement be approved.

*/s/ T. Lynn Walden*

18

T. LYNN WALDEN
State Bar No. 20674800
Post Office Box 7486
Beaumont, Texas 77726
(409) 833-0202 Telephone
(409) 832-3564 Telecopier
Email: twalden@wrtexaslaw.com